My name is Carlos Cruz and I represent the petitioner, Mr. Aaron Cortez-Herrera. Your Honor, in this case, the Board of Immigration Appeals abused his discretion in denying the petitioner's motion to reopen based on the following three reasons. First, the petitioner was clearly prejudiced by counsel's failure to file his 212c application. Second, the warning given to the petitioner by the immigration judge about the consequences of what would happen if he didn't file the application did not have solved the prejudice in counsel's failure to file that application for relief. And lastly, it is irrational to file a lack of prejudice based on petitioner's failure to notify the immigration judge about problems with filing the application. Yes, Your Honor. I've got a question about prejudice. Please, Your Honor. We've got a lot of cases that are somewhat similar, and I may have the totally wrong case in mind. But as I remember, this one is about a child molester and sexual assault. And the likelihood that the lawyer filing something seems so low, I wonder, would have been successful, seems so low, that I wonder if there was any prejudice. Yes, Your Honor. Actually, this particular individual is not a child molester. He was convicted of a 647.6 violation, which is annoying or molesting a child. I'm sorry? Annoying or molesting. It's a 647.6 violation of the penal code. And, in fact, this Court held in a decision that a violation of 647.6 is not an aggravated felony conviction. And so, therefore, we're dealing with a conviction here that this Court has already held is not an aggravated felony conviction because it is not sexual abuse of a minor. And so, therefore, we're presented with a case here where the applicant was clearly eligible for 212c relief, and yet his attorney failed to file the application. What is the crime again? The actual code section reads annoying or molesting a child, Your Honor. It's a PC violation, Penal Code Section 647.6. That's the California Penal Code. Yes, it is, Your Honor. And there's a case on point, and I can certainly cite it. So the idea of our decision is it could just be annoying, and that could be just some ugly old man that calls out hi to a kid every afternoon when he's walking home from school? That could be the case, Your Honor. Those factors have not been litigated in this case before the immigration judge. The government has the burden under the modified categorical approach to establish that it's more than annoying. That hasn't been done yet. The petition hasn't given the opportunity to rebut that evidence. So he meets the prima facie eligibility requirements. Absolutely, Your Honor. There's absolutely no reason to doubt prima facie eligibility here, especially in light of the Ninth Circus decision dealing with the violation of Penal Code Section 647.6. The issue here, therefore, is whether or not... I think we have some law that says eligibility and prejudice are not necessarily two sides of the same coin. For there to be prejudice, you have to show more than that you would have been eligible. You have to show it might have made a difference in your case. Yes, Your Honor, absolutely. And in this particular case, we're dealing with an individual who has been a legal resident for the last 22 years, whose wife is a U.S. citizen, whose children are U.S. citizens, whose convictions occurred 15 years ago. Rehabilitation is clear in this case. There is no argument of recidivism within the first 10 years as alleged by the government in these type of cases involving sexual abuse of a minor. And, moreover, we're not even dealing with sexual abuse of a minor at this point before these proceedings. We're dealing with a non-aggravated felony conviction, which at best is a more turpitude violation for which there is clearly a waiver. The equities in this case would far outweigh the convictions here. The judge, nevertheless, concludes... Some of these, the ones that I've had where there are more facts you could look at, some of them look like ones where relief was reasonably likely to be granted, like 19-year-olds with 15-year-old girlfriends. And some look like cases where relief was highly unlikely to be granted, like 19-year-olds with 4-year-olds. Yes, Your Honor, I understand that. I don't know what this is. Does the record say? No, Your Honor. I do not have that information regarding the particular facts of the conviction of the offense. But what I will tell the court is that when we're dealing with a case like this, one of the major issues in immigration court is rehabilitation. How long ago did the petitioner, the immigrant, commit these offenses? Here we're dealing with offenses that occurred 15 years ago. Rehabilitation is a major factor in establishing that he merits a favorable excess of discretion under Section 212C. And when you take rehabilitation, along with his family ties, his length of residence, his age at the time of entry, his age today, his infirmary... It's reasonably plausible that he could get relief. Absolutely, Your Honor. I do not see a way that the court could find that he's not... Let me ask you one, picking up from that last case we just heard, Lozada. Yes, Your Honor, of course. Was there compliance with Lozada here? And if not, is it a problem? No, Your Honor. There was compliance with Lozada in this particular case. The bar complaint was filed with the state bar. And, in fact, the immigration judge and the board did not deny the motion to reopen based on failure to comply with the procedural requirements of Lozada. They found that counsel was ineffective. And they made no mention or reference to failure to comply with the Lozada requirements. The issue here was, was the petitioner prevented from filing the application? And they provide two reasons. First, they say he should have filed the application himself. And second, they say the petitioner should have informed the judge that he was having problems filing the application. But this Court has dealt with that particular issue and that type of reasoning at least in two separate cases. Why didn't he file it? Your Honor, because he was under the impression that his attorney had filed the application for relief. No, no. Why didn't the lawyer file it? That is unknown to me, Your Honor. The record doesn't provide that information about why the lawyer did not file the application. After the petitioner was told that everything was being handled, that he shouldn't worry, that everything had been taken care of, and not only that, that someone had gone to the Whittier Criminal Court to request that criminal court background, there was plenty of information here to show or to establish to this petitioner that his attorney had filed the application. Moreover, he paid his attorney $10,000, which in immigration court is well above an average fee for a case of this nature. Wasn't there a change in lawyers? Wasn't that what the problem was? There was a change in attorneys without the authorization of the petitioner. Mr. Squam, who was the attorney initially hired, refers the case and simply sends the case over to another attorney, Mr. Burke, who then appears in court unprepared to go forward with the application, who he then himself files the motion to reopen based on Lozada against the attorney who had referred the case to him, apparently for some fee, as petitioner never paid for any of his particular services directly. I would ask this court to consider Rodriguez-Lawrence and also Castillo-Perez in deciding this case, as those two cases deal specifically with the issues presented in this case. In both cases, the petitioner was given a clear warning by the immigration judge about what would be the consequences if the application wasn't filed. In one case, the petitioner was told, as here, everything was fine, we're handling everything. And on those statements alone, this court found that the petitioner had in fact suffered prejudice as a result of the ineffective assistance of counsel. And lastly, the board's statement that the immigration, excuse me, that the petitioner should have approached the immigration judge to inform the judge that his attorney was not returning his phone calls is completely irrational. There is no mechanism available in the immigration court system today that would allow a petitioner, an immigrant, to approach an immigration judge without filing a motion, without requesting to advance a hearing, without moving to continue a hearing. If this court adopts that standard that says to succeed on the ineffective assistance of counsel claim, the individual, although representing my counsel, must go to the immigration judge, speak to the judge in the absence of counsel. To say that that is what is required to succeed on this claim is completely irrational and should not be accepted by this court. And therefore, given that the board abused its discretion, I would ask this court to vacate the board's decision and remain in these proceedings. And I would like to reserve my remaining time for rebuttal. Thank you, counsel. Counsel. May it please the court, Angela Miller on behalf of the Attorney General. Petitioner's claim before this court, which is based on an alleged due process violation, fails for two reasons. First, in order to have a due process claim, you must first have a protected liberty interest at stake. And here, the petitioner cannot establish a protected liberty interest because the type of relief he was seeking. Haven't we addressed that argument before? You've actually held that you do not have a protected liberty interest in discretionary relief. Yeah, but the argument that you advance in your brief, which you've seen quite a bit lately in a number of these cases, seems to me, as I recall, that we've already dealt with that issue and have just rejected that argument. I don't think this court has ever rejected the argument that you don't have a protected liberty interest in discretionary relief. That's a little broad. Yeah. But the whole notion of right to counsel stems not – is a due process, right, notions of a fair hearing. Right. I understand that this court has also held that procedure alone cannot give rise to a substantive right. So you can't have the cart before the horse. And the Supreme Court's held that, and this court has recognized that. However, this court does not even need to address that issue because assuming that he has a protected liberty interest or presuming, as this court has held, that you have a Fifth Amendment right to effective assistance of counsel in immigration proceedings, assuming that, the board did not abuse its discretion in finding that the petitioner had not established prejudice. Even assuming his counsel filed the application on time, it still would have been rejected because it was incomplete. And that distinguishes this case from Rodriguez-Larry's case. Well, that's why – but, you know, the lawyer has an obligation to file an application that's complete. Absolutely. And in this case – That's why he's ineffective. I mean, a competent lawyer would file a timely application that's fully complete. Absolutely. And I think he – That didn't happen here. Didn't file a complete application, not simply because of the attorney's actions, but because of the petitioner's inactions. He had requested his criminal record. What would you do if you hired an attorney? If I had been – Would it be reasonable for you to think that the lawyer would get the job done? Not if I knew that I had requested a criminal record and I had been warned by the immigration judge two and a half years earlier that it was necessary to accompany my waiver. Well, why – let me ask you this. Why would you even hire – given that argument or that approach, why would you even bother to hire a lawyer? Well, I think that what the responsibility of the petitioner in this case was to secure his criminal record, not to fill out the application or to file it. And I agree that the petitioner – Why bother hiring a lawyer? I understand your concern, Your Honor. And I do understand that the petitioner's counsel's failure to file the application on time was deficient. But the petitioner's counsel – Your point, though, is that he should have been the one to go get the records. He did get the records. He requested – Or that the lawyer – or that the lawyer – he should have done everything that the lawyer didn't do. I'm not saying that, Your Honor. What I'm saying – What are you saying? What are you saying? What I'm saying is that the administrative record reveals that the petitioner requested his criminal record three months before the hearing. And he knew that he didn't get it. And so that's what I don't understand petitioner's argument, that he thought his application had everything that it needed. He knew that he didn't get his record back. He requested it three months before. So, again, had his counsel even submitted the application on time, it still would have been incomplete because – Counsel? Sure. I'm confused about several elements of that. Let me cut to the chase and say I would think the client would think his lawyer is going to take care of what needs to be taken care of. My client said – did not hound me about whether I was complying with discovery deadlines and getting the right documents filed, and I would have told them to quit wasting my time if they had. I don't understand that part of your argument. The other part I don't understand, and I'm telling you this so you can educate me so I do understand, is the IJ says, while counsel may be in part to blame, the record reflects that the respondent was granted a fair opportunity to meet his responsibility. He does not argue that he contacted the immigration court to notify the immigration judge of any difficulties. Now, it's really very common for clients to think that their lawyers are doing a lousy job and to call the trial court clerk and say, I want to complain about my lawyer. And at least when I was a trial judge, those calls were not put through to me. We don't take calls behind lawyers' backs about how the clients think their lawyers should be doing this and that. And in the state superior court and the state district court, it was the same way. They just expect a certain amount of nagging and annoying phone calls from clients, especially out at the jail, and they ignore them. They tell them, well, you've got a lawyer. I think that's what your opponent meant by saying there's no mechanism. I don't understand what the guy is supposed to do once he puts it in the hands of a lawyer. Well, I'm not sure that he was supposed to contact the court to complain about his lawyer. He had actually met with second counsel. We don't even accept filings from the clients. They're stamped received instead of filed. If the client has a lawyer but he tries to file something because he thinks his lawyer has dropped the ball, they don't get filed. I think we have to assume if the immigration judge informed the petitioner that if he was having difficulty getting the documents or getting in touch with his counsel or having a problem in any way meeting the two-and-a-half-year deadline to apply for the waiver, to let the court know that perhaps there was an issue. How was he to do that? How? I'm not sure how that met. Well, you're defending what the BIA's decision. So tell me how he's supposed to do that. How he's supposed to contact the immigration judge? Yes. Well, the BIA's decision is that he didn't establish prejudice because he himself had failed to gather the documents necessary to provide to his attorney that the attorney could then submit to the court. And that's how this case is distinguished from Rodriguez-Lurie's. They haven't answered Judge Kleinfeld's question yet. I'm sorry. I thought I was answering your question. No. How is he supposed to notify the immigration judge or the court that he's got problems with his lawyer? And, again, I'm not sure we're dealing with him having problems with his lawyer. He met with his lawyer. But he can't get the documents. I think he should have notified his lawyer and said, I did not receive the documents that I was directed to get by the immigration judge two and a half years earlier. He requested the documents, and he knew that he had to have them two weeks before his hearing. And he knew that he didn't have them. I think it was incumbent upon him to notify his counsel, who he had met with, that I have not received the documents necessary to go forward. His second counsel is the one who explained that he didn't listen to the tape of the first immigration proceeding until the morning of. And that's when his second counsel realized that they were late with the application. However, he hasn't submitted any lasada requirement against his second counsel. Let me ask you this. Okay, so maybe I misread this wrong, or I didn't listen completely when Judge Kleinfeld noted it. But it says, while counsel may be in part to blame, the record reflects that the respondent was granted a fair opportunity by the IJ to meet his responsibility to either comply with a deadline or inform the immigration judge of any problems preventing him from such compliance. So how was he supposed to carry that out? I think you can read the immigration judge's decision that he had a fair opportunity to present his case. No, no, no. I'm asking you, how was he supposed to carry that out? Physically. How was he supposed to do that? I think what we're both getting at is people call the deputy clerks and talk in hundreds of languages about this and that. What actually happens physically? Again, I think in this case, because the petitioner was responsible for getting the documents to provide to his attorney, and he didn't have them, he could have notified his attorney that he didn't have the documents that were necessary, and then the attorney could have notified the court. I think you can work through your counsel. I don't know. This is pretty direct, but it does not argue that he contacted the immigration court to notify the immigration judge of any difficulty. If he was having difficulty getting the records that were necessary to accompany his application, then I think he could have talked to his counsel, and his counsel, the representative for petitioner, he, could have then informed the court that they needed. So I'm supposed to read that he meaning his counsel? I think you can read it that way. Okay. My questions to you were based on a background of knowing the rules in the district court where I was a judge and others that I'm aware of, which is once a person's represented by counsel, he cannot file anything. His lawyer files. Filing papers is how you notify judges of desires and demands and information and whatnot. You don't get to just walk into court and say, Judge, I have something to say. So I'm trying to figure out, are the rules different in immigration court? Is there some way to actually physically contact the judge? I am unaware of any. And, again, I don't think we're dealing with a situation where this petitioner needed to notify the immigration judge that he was having problems with his attorney. This was the second attorney who he had met with. And so it's not a function of him not being able to communicate with his attorney. It's he should have notified his attorney that he didn't have the documents necessary to accompany his application for relief. And in that situation, then this petitioner could have notified his counsel, and the counsel could then have requested from the court either an extension to gather the documents or notified the court that there was a problem, like the immigration judge instructed him to do so two and a half years earlier. My time just ran out. I'm happy to entertain any other questions the panel may have otherwise. Thank you, counsel. Thank you very much. Thank you. Your Honor, regarding the issue of whether or not the petitioner failed to supply the documents that were needed, there is evidence in the record that shows the complete opposite. At page 40 of the record, line 8, the petitioner asked the attorney's office, are there any other documents that you need? And he was told there's nothing else that we need to file the application, line 8. In that same line 8, he was told that the office had gone to the Whittier court to get the criminal records. So he's being told that nothing else is needed to file the application and that the criminal record is being requested by the court directly at the Whittier court, and that is at page 40, line 8, in this particular record. There is absolutely no mechanism available as well for the petitioner to address and approach the immigration judge. There was absolutely nothing that this individual could have done to inform the court. Now, counsel argues that it was the attorney who had the obligation to inform the court about any problems with the application. But if you look at the immigration judge's decision itself, which is part of the board's decision, at page 66 of the record, the court added, and I quote, that respondent himself should make certain that his attorney provides those documents to the court. And then the court says the court also warned that respondent should inform the court of any problems prior to the hearing. The court here, the immigration judge, was addressing the respondent himself, not the attorney, not counsel, but the respondent, in this case the petitioner. Therefore, on the basis that the BIA abused his discretion, these proceedings should be remanded. Thank you, Your Honors. Thank you, counsel. The court has Herrera v. Gonzalez is submitted. We'll hear Hernandez-Mendoza v. Gonzalez.
judges: Kleinfeld, Paez, Hart